(173 App. Div. 232)

KIRKE LA SHELLE CO. v. ARMSTRONG.

(Supreme Court, Appellate Division, First Department. June 2, 1916.)

1. LIMITATION OF ACTIONS ☞37(3)—STATUTE OF LIMITATIONS—ACTION FOR MISREPRESENTATIONS.

An action brought by a producing company against a playwright, November 3, 1911, to recover expenses incurred, and the judgment in a copyright infringement suit against the producing company, the cause of action being to recover for damages sustained by the company in continuing its contract with the playwright, relying upon his false representations that he was the author of a play, and that there was no foundation in the infringement claim, which representations were made in November, 1905, was not barred by the statute of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 184; Dec. Dig. ☞37(3).]

2. EVIDENCE ☞332(1)—RECORD EVIDENCE—MATERIALITY.

In an action by a producing company against a playwright to recover expenses incurred and judgment in a copyright infringement suit in the United States District Court against the producing company, the record in the District Court, showing that the issue litigated therein was that involved in the instant suit, whether the playwright was the author of his play, was properly received in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1237, 1240; Dec. Dig. ☞332(1).]

3. JUDGMENT ☞720—RES JUDICATA.

Judgment in the United States District Court in a copyright infringement suit against a play-producing company was res judicata that the purported author of the play was not such in the producing company's suit against him on his false representations that he was the author; he having been vouched into the District Court and taken part in the defense.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1251; Dec. Dig. ☞720.]

4. COPYRIGHTS ☞57—"INFRINGEMENT."

There can be no infringement of the copyright of a work of fiction, unless defendant copies and appropriates the story; a mere similarity of ideas being insufficient.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 53, 60; Dec. Dig. ☞57.

For other definitions, see Words and Phrases, First and Second Series, Infringement.]

5. TRIAL ☞170—DIRECTION OF VERDICT—PROPRIETY.

Where there was no disputed question of fact to send to the jury, defendant moved to dismiss the complaint, and plaintiff moved for a direc-

tion of verdict, and, after his motion to dismiss was properly denied, defendant did not ask to have any facts submitted to the jury, verdict was properly directed.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 390–394; Dec. Dig. ☞170.]

Action by the Kirke La Shelle Company against Paul Armstrong. Verdict was directed for plaintiff, and defendant's exceptions ordered to be heard in the first instance at the Appellate Division. On reargument of defendant's motion for new trial upon the exceptions, after defendant's death and appointment of an administratrix. Defendant's exceptions overruled, and judgment directed to be entered upon the verdict.

See, also, 157 N. Y. Supp. 909.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Phelan Beale, of New York City, for the motion.
Leavitt J. Hunt, of New York City, opposed.

PAGE, J. The court directed a verdict and ordered the exception heard in the first instance at the Appellate Division. It transpired on the argument of the exceptions before this court on March 2, 1916, that the defendant had died after the rendition of the verdict, and that an administratrix had been appointed, but was not represented before us. By appropriate proceedings she is now before the court, and has appeared by attorney in open court and consented that the cause should be determined on the briefs and argument heretofore had. The facts, briefly, are that: The defendant wrote a play entitled "The Heir to the Hoorah." On December 4, 1904, Kirke La Shelle entered into a contract with defendant, whereby the defendant sold the play and all playing rights to Kirke La Shelle, who agreed to produce it on or before May 1, 1905, and to pay $2,500 down and $12,500 in installments of a specified amount for each of the 75 playing weeks that the play should be performed. On May 16, 1905, Kirke La Shelle died, having commenced the performance of the play, and having paid defendant the amounts contracted to be paid up to that time. Thereafter his executrix performed the contract until the 11th day of July, 1905, when she sold and transferred the play to the plaintiff, with the consent of the defendant, and plaintiff thereupon assumed the contract between the defendant and Kirke La Shelle, and performed the same, paying the defendant installments to the amount of $9,328.69. In November, 1905, one Henry J. Dam notified the plaintiff by letter that the play, "The Heir to the Hoorah," was an unlawful dramatization of his copyrighted story entitled "The Transmogrification of Dan," published in the "Smart Set" for September, 1901, and forbade the plaintiff to further produce the play, and demanded an accounting. The plaintiff sent this letter to the defendant, who indorsed upon it:

"The claim is preposterous—utterly and absolutely false. This letter, it seems to me, comes pretty close to attempted blackmail. Paul Armstrong"

—and returned it so indorsed to plaintiff. Thereafter defendant insisted on the payments called for under the contract being made to

him and the contract performed. Relying on these representations of the defendant that Dam's claim was false, the plaintiff continued to perform the play and paid to the defendant the remaining installments under the contract. Dam brought suit against the plaintiff in the United States District Court, and defendant's attorney admits that the defendant was properly vouched in and took part in the defense.

The action resulted in a judgment wherein it was found that the play was an infringement of the copyright of the story, and a judgment was awarded against plaintiff for $22,367.58. The decree was affirmed on appeal by the United States Circuit Court of Appeals. Plaintiff commenced this action against the defendant November 3, 1911, to recover, among other things, the said sum and $11,186.40 for expenses incurred in defending the suit. The judgment was settled for $8,000, and a supplemental complaint was served. At the close of the trial the plaintiff elected to stand on the second cause of action, to recover damages sustained by reason of the false representations made by the defendant after November 4, 1905, namely, the amount paid in settlement of the judgment and expenses in defending the suit in the United States court. The justice directed a verdict for $18,904.54 in plaintiff's favor, and the following exceptions are presented:

I. That the statute of limitation barred the action.

II. Improper amendment was allowed to the complaint.

III. In refusing to compel plaintiff to elect between two causes of action.

IV. Improper admission of the record of the United States District Court in Dam v. Kirke La Shelle Company.

V. Exclusion of the evidence of certain witnesses.

VI. That no fraud was shown.

VII. In directing a verdict.

The second and third of these require no discussion, as the trial justice properly exercised his discretion. We will consider the others.

[1] I. The defendant assumes that the action was to recover for the original misrepresentation at the time the contract was made with Kirke La Shelle, whereas the cause of action upon which the verdict was directed was to recover for the damages sustained by the plaintiff in continuing the contract, relying upon defendant's false representations that he was the author of the play and that there was no foundation in Dam's claim, and was only to recover (in the last analysis) for the damages that they had suffered from the suit of Dam. The action was brought within the six years from the making of these representations.

[2] IV. The record in the United States court was properly received in evidence. It was shown thereby that the issue that was litigated therein was the same as that involved in this case; i. e., whether the defendant copied and plagiarized the story of Dam, or whether he was the author of the play as he claimed. It also showed the defendant's participation in the trial.

[3] V. The witnesses whose testimony was excluded attempted to testify upon the issue which had been settled in the United States court and was res adjudicata against the defendant.

[4] VI. The defendant claims no fraud was shown, in that it was not proved that he knew the statements were false. But there could be no infringement of Dam's copyright, except the defendant copied and appropriated that story. A mere similarity of ideas would not be sufficient. The determination of the United States court necessarily found the fact that he had knowingly copied and plagiarized Dam's copyrighted story, after hearing this defendant and his witnesses.

[5] VII. There was no disputed question of fact to send to the jury. The defendant moved to dismiss the complaint, and the plaintiff moved for a direction of the verdict. After his motion to dismiss the complaint was denied, the defendant did not ask to have any fact submitted to the jury. There was therefore no error presented by the exceptions.

The defendant's exceptions are overruled, with costs, and judgment directed to be entered upon the verdict, as prescribed in section 763 of the Code of Civil Procedure. All concur.