THE KIRKE LA SHELLE COMPANY, Plaintiff, *v.* THE PAUL ARMSTRONG COMPANY and Another, Defendants.

Supreme Court, New York County, May 10, 1932.

*Hunt, Hill & Betts* [*Reese D. Alsop* and *William D. Meagher* of counsel], for the plaintiff.

*Bouvier & Beale* [*Pheland Beale* of counsel], for the defendants.

MCGEEHAN, J.   The plaintiff in this action at law for damages for an alleged breach of contract, tried without a jury, asks for one-half of the net amount paid to the defendant corporation by the owner of the motion picture rights of the play "Alias Jimmy Valentine" for a confirmation and grant to such owner of the " sound movie " and/or " talkie movie " rights in and to the motion picture production of such play.

In an action in this court the plaintiff obtained a money judgment against the author of the play.   (*Kirke La Shelle Co.* v. *Armstrong,* 173 App. Div. 232; affd., 224 N. Y. 582.)

By an agreement entered into on December 8, 1921, prepared

by the plaintiff's attorneys, after conference and correspondence with these defendants, another action in this court based on such judgment was settled and discontinued.

The agreement provides: "We [plaintiff's attorneys] are to receive for our clients (all checks being drawn to our order) one-half of all moneys you are entitled to receive from any revivals of 'Alias Jimmy Valentine,' including productions in New York City, 'on the road' or 'in stock,' from now on, throughout the United States and Canada."

It further provides that if the amount received by the plaintiff from the "revival production" of such play, which opened at the Gaiety Theatre in New York city on the evening of December 8, 1921, was insufficient to satisfy the judgment with interest then the plaintiff was to receive one-half of all moneys from any revivals of the play "Salomy Jane."

The settlement was made "on the distinct understanding that all contracts, sales, licenses, or other arrangements to be made in the future affecting the title to the dramatic rights (exclusive of motion picture rights) to the above two plays or the production of the said plays in New York City, 'on the road' or 'in stock' will be submitted to us [plaintiff's attorneys] before execution or delivery and shall be subject to our approval."

A motion was made at Special Term to dismiss the complaint herein for alleged insufficiency. Mr. Justice SHERMAN, in his opinion denying such motion, concluded by saying: "The trier of the facts must determine the real scope and proper interpretation of the contract, in the light of the relationship of the parties, their intent and the then state of the art." (N. Y. L. J. Oct. 3, 1929, p. 54.)

It is undisputed that the "silent" motion picture rights of the play were sold more than seven years before the parties made their agreement. They expressly excluded such rights. They agree that in December, 1921, motion pictures with sound and dialogue synchronization had no commercial value. "Talkies," as now made, were then unknown.

The words "revival" and "production," and the phrases "on the road" and "in stock," have definite and well-recognized meanings in the theatrical profession and as used in the agreement at the time it was made were limited to performances upon a stage by actors and actresses portraying in person before an audience the various characters of the play.

Should the agreement be construed so as to include a display upon a screen, accompanied by sound and dialogue? If this were done it would be tantamount to reading into the agreement a pro-

vision which clearly was not within the contemplation of the parties at the time of its making.

The agreement must be considered in its entirety and even supplemented by the letter of December 9, 1921 (Plaintiff's Exhibit 2), may not be extended so as to give to the plaintiff a right to participate in moneys received by the defendants from sources other than revivals of the play.

When the plaintiff was given the right of approval of " all contracts, sales, licenses, or other arrangements to be made in the future affecting the title to the dramatic rights (exclusive of motion picture rights)," it was with respect to revivals of the play as then known and understood. All that was assigned to the plaintiff was an interest in the proceeds of such revivals and not an interest in the " sound movie," and/or " talkie movie " rights in and to the motion picture production of the play.

The plaintiff contends that the agreement should be construed so as to imply a negative covenant on the part of the defendants not to dispose of the sound and dialogue rights without its approval. Upon a consideration of the evidence in this case in the light of the authorities, cited by the respective parties, it would seem that the fair and reasonable construction to be applied is that such a negative covenant may not be implied.

The plaintiff finally argues that the agreement constituted the parties joint adventurers owing to each other a fiduciary duty which it is claimed was violated by the defendants by their release of the sound and dialogue rights of the play without the knowledge and consent of the plaintiff. When it is considered that the relationship of the parties was that of judgment creditor and judgment debtor such argument would seem to fall of its own weight.

As already indicated, and as appears from the opinion of Mr. Justice SHERMAN, the controversy resolves itself into one of construction of a contract, entered into after prolonged negotiations. Applying to this agreement rules of construction that are generally followed, the finding here should be in favor of the defendants. Accordingly a verdict is directed for the defendants, with an exception to the plaintiff. The clerk will enter judgment. Thirty days' stay of execution; sixty days to make a case on appeal.